**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

            v.

MICHAEL MAIER,
            *Defendant-Appellant.*

No. 09-10397

D.C. No.
1:08-cr-00103-
AWI-1

ORDER AND
AMENDED
OPINION

Appeal from the United States District Court
for the Eastern District of California
Anthony W. Ishii, Chief District Judge, Presiding

Argued and Submitted
September 10, 2010—San Francisco, California

Filed April 27, 2011
Amended July 18, 2011

Before: Betty B. Fletcher, Richard C. Tallman, and
Johnnie B. Rawlinson, Circuit Judges.

Opinion by Judge B. Fletcher

9673

## COUNSEL

Robert Warren Rainwater, Esquire, Eugene, Oregon, for defendant-appellant Michael Maier.

David L. Gappa, Assistant U.S. Attorney, Fresno, California, for plaintiff-appellee United States of America.

## ORDER

The opinion filed on April 27, 2011 and published at 639 F.3d 927 (9th Cir. 2011), is AMENDED as follows. In the second paragraph of Section III, the last sentence reads:

"[W]e may reverse if, upon reviewing the record, we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors." *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009).

This sentence is deleted in its entirety and replaced with the following text and footnote:

The en banc decision in *United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc), settled the standard of review for abuse of discretion in the Ninth Circuit. Our circuit has adopted "a two-part test to determine objectively whether a district court has abused its discretion." *Hinkson*, 585 F.3d at 1261. The first step "is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *Id.* at 1261 62. If the trial court did not do so, it abused its discretion. If, instead, the trial court identified the correct legal rule, "we move to the second step of our abuse of discretion test." *Id.* at 1262. At this stage, we must "determine whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quotation marks and citation omitted). "If any of these three apply, only then are we able to have a definite and firm conviction that the district court reached a conclusion that was a mistake or was not among its permissible options, and thus that it abused its discretion by making a clearly erroneous finding of fact." *Id.* (quotation marks omitted).[3]

---

[3]Although the pre-*Hinkson* standard for abuse of discretion review has been referenced in at least one post-*Hinkson* appeal, *see, e.g.*, *United States v. Dewey*, 599 F.3d 1010, 1016 (9th Cir. 2010), the *Hinkson* standard is the correct and controlling standard under our current circuit precedent.

With this amendment, the panel has unanimously voted to deny the petition for panel rehearing. Judges Tallman and Rawlinson voted to deny the petition for rehearing en banc, and Judge Fletcher has so recommended.

The petition for en banc rehearing has been circulated to the full court, and no judge has requested a vote on whether to rehear the matter en banc. Fed. R. App. P. 35(b).

The petition for panel rehearing and the petition for rehearing en banc are DENIED.

No future petitions for rehearing or rehearing en banc will be entertained.

---

## OPINION

B. FLETCHER, Circuit Judge:

Defendant Michael Maier appeals his sentence of 210 months and a lifetime term of supervised release for receipt/distribution of child pornography. We must decide, first, whether the district court correctly relied on the factors set forth in 18 U.S.C. § 3553(a) to guide its discretion in choosing which of two counts to dismiss when required to do so by the Double Jeopardy Clause; and second, whether the district court's sentence was procedurally or substantively unreasonable. We have jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a), and we affirm.

## I.

In March 2008, Immigration and Customs Enforcement ("ICE") agents received a lead from internet service provider Yahoo! that an unknown individual had used a Yahoo! account and Yahoo! photo-sharing program, Flickr, to upload

child pornography. Following an investigation, agents traced the source of the uploaded files to a dormitory room at the United States Naval Air Station at Lemoore, California. The room was occupied by defendant Michael Maier, a Navy police officer stationed at the base. A federal search warrant for the room was procured and executed on March 13, 2008.

Upon entering Maier's room, ICE agents found a laptop computer. Agent Ulysses Solorio, a forensic computer examiner, located a large volume of child pornography in an electronic folder associated with Google Hello, another photo-sharing program.[1] The agents subsequently encountered Maier, who was not in his room when the search warrant was executed, elsewhere on the base. After the ICE agents informed him that he was a suspect in an ongoing federal investigation, Maier waived his *Miranda* rights and agreed to be interviewed.

During the interview, and in a written statement provided to the ICE agents, Maier admitted that he was addicted to child pornography. According to the agents, Maier — who was twenty-six years old at the time — stated that he had been viewing, receiving, and/or distributing child pornography since he was approximately sixteen or seventeen years old. He told the agents his behavior "disgusted" him but that he had been unable to stop it. He also told the agents that he had made anonymous reports regarding other individuals with whom he had viewed and shared child pornography, in an effort to feel better about his compulsive behavior.

Maier provided the agents with his computer password and the user names and passwords for his various online accounts.

---

[1]According to ICE, Google Hello "allowed for the rapid and massive trading of images between persons," and soon came to be used primarily "for illicit trading of child pornography." Google discontinued the program in 2008 after law enforcement officials notified the company of this trend.

Using his laptop and this information, agents subsequently identified seventy-four additional people involved in child pornography, with whom Maier had communicated during a five-month period, from November 2007 to March 2008. As a result of this investigation, federal agents discovered that Maier sent 4,686 images and received 4,227 others during this period.[2]

A federal grand jury indicted Maier on two counts. Count One charged him with receipt or distribution of child pornography, in violation of 18 U.S.C. § 2252(a)(2). Count Two charged him with possession of the same, in violation of 18 U.S.C. § 2252(a)(4)(B). In June 2009, Maier pleaded guilty to Count One without a plea agreement. On September 22, 2009, the district court held a sentencing hearing. At the start of the hearing, Maier additionally pleaded guilty to Count Two, again without an agreement with the Government.

Following Maier's plea of guilty to Count Two, the ICE case agent assigned to the investigation, Senior Special Agent Mike Prado, testified at length regarding Maier's illegal activities. Based on his experiences in more than two hundred child pornography investigations, Prado testified that the Maier case had yielded "some of the youngest images that I have seen at all in my investigations," including pictures of infants and children between one and three years of age. Prado further stated: "Mr. Maier falls on the far end of the spectrum as far as the heinous images, the sexually violent images that he had[, t]he extremely vulnerable and young age of the victims . . . as well as . . . how prolific of a distributor he was at the time of his arrest." Maier then made a statement to the district court about his behavior and his remorse.

---

[2]During the sentencing hearing, the district court noted that these figures included some duplicate images and some adult-only pornography. Nevertheless, based on evidence presented during Maier's sentencing hearing, the court "specifically [found] that there were well over . . . thousands" of images of child pornography sent or received by Maier.

The district court proceeded to calculate Maier's total offense level. Pursuant to the U.S. Sentencing Guidelines, the base offense level for receipt or distribution of child pornography is 22. *See* U.S.S.G. § 2G2.2(a)(2). A two-level increase was warranted because the materials involved prepubescent minors. *See id.* § 2G2.2(b)(2). Observing that "clearly there were constant exchanges of images, excessive bartering back and forth, negotiations . . . [and] a reluctance to, by Mr. Maier, to send images to another person until he got something of worthwhile value [in return]," the district court also found that an additional five-level increase was warranted for "[d]istribution for the receipt, or expectation of receipt, of a thing of value." *See id.* § 2G2.2(b)(3)(B). Since many of the images Maier possessed depicted bondage or sexual abuse of prepubescent children, a four-level increase for sadistic or masochistic content or other depictions of violence was also warranted. *See id.* § 2G2.2(b)(4). Maier's use of a computer warranted a two-level increase, *see id.* § 2G2.2(b)(6), and involved "thousands" of images, warranting a further five-level increase. *See id.* § 2G2.2(b)(7)(D). The district court found that a three-level reduction was justified on account of Maier's acceptance of responsibility. *See id.* § 3E1.1(a)-(b). Maier's total offense level, therefore, was 37. Given that Maier had no criminal history, he was assigned a criminal history category of I. Accordingly, the advisory sentencing range was 210 months to 262 months imprisonment; but because the statutory maximum under Count One was 240 months, Maier's effective Guidelines range was 210 to 240 months imprisonment.

The district court noted that, pursuant to Ninth Circuit precedent prohibiting conviction and sentencing for both possession and receipt/distribution of child pornography when the charges are predicated on the same set of images, *see generally United States v. Davenport*, 519 F.3d 940 (9th Cir. 2008), it had to exercise its discretion to determine whether Maier should be sentenced under Count One or Count Two, *see gen-*

*erally United States v. Hector*, 577 F.3d 1099 (9th Cir. 2009).
The district court reasoned:

> I find that, given the number of images involved
> here, the number of victims, the extensive distribu-
> tion back and forth, the number of individuals that
> Mr. Maier has exchanged images with, that clearly
> this is a sentence under Count One. Receipt and dis-
> tribution is far more appropriate. In fact, it is the
> only appropriate sentence under the facts of this
> case, as opposed to mere possession, which would
> clearly understate Mr. Maier's involvement and
> criminal activity in this case.

Accordingly, the district court determined it would vacate
Maier's conviction for possession of child pornography under
Count Two and instead impose the judgment and sentence
under Count One for receipt or distribution of child pornogra-
phy.

The court next considered the factors set out in 18 U.S.C.
§ 3553(a) to determine what would constitute a reasonable
sentence in Maier's case. *See United States v. Booker*, 543
U.S. 220, 245 (2005). It noted that "the public through Con-
gress" has expressed its view that Maier's offense is "very
serious." The court maintained that "[i]t is absolutely essen-
tial, because of the proliferation of this type of crime, that a
sentence be imposed that promotes respect for the law and
provides just punishment for the offense. . . . [and] to protect
the public from further crimes of the defendant."

The district court explained that the circumstances relevant
to Maier's offense included the number of images he had
exchanged, the age and vulnerability of the victims in those
images, the "types of images seen," and Maier's electronic
conversations, in which he had repeatedly expressed a desire
to have a daughter to molest. The district court conceded that
these conversations "may be fantasy," but observed that "as

[Maier's] conversations progressed, [they] appear[ed] to be more bizarre [and] more violent."

The district court also considered various factors weighing in Maier's favor, including the fact that he had suffered physical and emotional abuse as a child and "obviously [has] very serious mental issues regarding his self-esteem, [and] depression." The district court noted Maier's young age, lack of prior criminal history, family ties and support, intelligence and resourcefulness, military service, and cooperation with government officials during their investigation.

Taking the foregoing factors into account, the district court imposed a prison sentence of 210 months, at the low end of the Guidelines range. In addition, the court imposed a lifetime term of supervised release, expressing concern that, without treatment and supervision, Maier would pose a risk to the public.

## II.

## A.

[1] "The Fifth Amendment's prohibition on double jeopardy protects against being punished twice for a single criminal offense." *Davenport*, 519 F.3d at 943 (citing U.S. Const. amend. V; *Brown v. Ohio*, 432 U.S. 161, 165 (1977)). In *Davenport*, we held that the Double Jeopardy Clause prohibits conviction and sentencing for both possession and receipt/distribution of child pornography when the charges are predicated on the same set of images. *See id.* at 947-48.

There is no dispute that, in light of *Davenport*, the district court could not enter a judgment of conviction and sentence Maier under both of the charged crimes, and that the district court therefore had to dismiss one of the two counts. On appeal, Maier contends that the district court should have sen-

tenced him under the possession count and dismissed the receipt/distribution count, rather than the reverse.

**[2]** In *Hector*, we held that when a defendant is convicted of both possession and receipt/distribution of child pornography, and the charges are predicated on the same set of images, the district court must exercise its discretion to determine which one of the two counts to dismiss. *See* 577 F.3d at 1103-04. Because this decision is a matter of discretion, *see id.*, we review the district court's choice for an abuse of that discretion.

*Hector* makes clear that district courts must exercise their discretion in choosing which count of conviction to vacate even "where a defendant's conduct violated two statutes and the prosecutor decided the case warranted the more severe charge." 577 F.3d at 1103-04 (citing *Ball v. United States*, 470 U.S. 856, 866 (1985); *United States v. Schales*, 546 F.3d 965, 977-81 (9th Cir. 2008)). As we have recognized, however, a district court "should" exercise its discretion to vacate the lesser-included offense, absent unusual circumstances and compelling reasons to vacate the greater offense. *See United States v. Jose*, 425 F.3d 1237, 1247 (9th Cir. 2005) ("Thus, when a jury convicts on both the greater and the lesser included offenses, absent a clear indication by Congress that it intended to allow punishment for both offenses, the district court should enter a final judgment of conviction on the greater offense and vacate the conviction on the lesser offense." (citing *Rutledge v. United States*, 517 U.S. 292, 306 (1996))); *see also, e.g.*, *United States v. Batchelder*, 442 U.S. 114, 125 (1979) ("Just as a defendant has no constitutional right to elect which of two applicable federal statutes shall be the basis of his indictment and prosecution neither is he entitled to choose the penalty scheme under which he will be sentenced."). Such a rule safeguards against cases where a defendant charged with both possession and receipt/distribution of child pornography pleads guilty to both

offenses with the hope that he will be sentenced under the lesser crime.

**[3]** The choice of which count to vacate is fundamentally a sentencing decision. A district court evaluating a case like Maier's must choose whether the defendant's transgressions warrant a lesser penalty — a shorter statutory term of imprisonment for possession of child pornography — or a greater penalty — a longer statutory term for receipt/distribution. Under *Booker* and its progeny, district courts making such determinations must evaluate the factors set forth in 18 U.S.C. § 3553(a), which lists the policies Congress has established to guide courts in federal sentencing. *See, e.g.*, *Rita v. United States*, 551 U.S. 338, 347-48 (2007). We therefore hold that a district court's exercise of its discretion under *Hector* is to be guided by the § 3553(a) factors. An analysis rooted in these factors may also lead to the conclusion that the greater offense should be vacated. Where, as here, the defendant is factually guilty of both possession and receipt/distribution of child pornography, the district court must evaluate these factors, not the mere fact of the offense, in determining which count to vacate as well as what constitutes a reasonable sentence.

**B.**

**[4]** In this case, the district court evaluated the following factors in choosing to vacate the possession count and to sentence Maier under the receipt/distribution count: (1) the number of images Maier had distributed and received; (2) the number of victims depicted in those images; and (3) the number of individuals with whom Maier had exchanged images. Having thus considered the "nature and circumstances" of Maier's offenses, the district court concluded that sentencing Maier for "mere possession" would "clearly understate . . . [the] criminal activity in this case." *See* 18 U.S.C. § 3553(a)(1). The district court emphasized that "[i]t is absolutely essential, because of the proliferation of this type of

crime, that a sentence be imposed that promotes respect for the law and provides just punishment for the offense." These statements show an acknowledgment of the need for a sentence "to reflect the seriousness of the offense" and "provide just punishment" for it. 18 U.S.C. § 3553(a)(2)(A). They also evidence the court's understanding of the need "to afford adequate deterrence to criminal conduct." *Id.* § 3553(a)(2)(B).

**[5]** The district court further noted that "unless and until Mr. Maier receives treatment, he is likely to re-offend. . . . It's obviously a concern to me [to hear] of his discussions, whether they're fantasy or not, of wanting to have children and if he had daughters, to sexually abuse them." For these reasons, the district court indicated that it would "recommend in this case that Mr. Maier take advantage of any in-custody programs that might assist him in addressing essentially what I'm going to determine to be his addiction to child pornography." Thus, the court's reasoning reflects the need "to protect the public from further crimes of the defendant," 18 U.S.C. § 3553(a)(2)(C), and "to provide the defendant with needed . . . correctional treatment in the most effective manner," *id.* § 3553(a)(2)(D).

**[6]** In choosing which count to vacate, the district court clearly evaluated the totality of the circumstances of Maier's case under *Hector* along with the § 3553(a) factors. Because the district court vacated the lesser-included offense and there were no compelling reasons to do otherwise, the district court did not abuse its discretion. Accordingly, we affirm its decision to vacate Count Two and to sentence Maier under Count One.

### III.

Maier also contends that his sentence is procedurally and substantively unreasonable. Procedurally, Maier maintains, the district court erred by failing to explain why it did not depart downward from the Guidelines range after finding var-

ious mitigating factors. Substantively, Maier argues, these mitigating factors demand a downward departure from the Guidelines.

In evaluating the procedural reasonableness of a sentence, we assess whether the district court explained the sentence "sufficiently to permit meaningful appellate review." *United States v. Carty*, 520 F.3d 984, 992 (9th Cir. 2008) (en banc). Before concluding that a sentence is substantively reasonable, we must consider the totality of the circumstances. *Id.* at 993 (citing *Gall v. United States*, 552 U.S. 38, 49-50 (2007)). Our circuit does not attach a presumption of reasonableness to a sentence merely because it falls within the Guidelines range. *Id.* at 994. We review the substantive reasonableness of a sentence under a "deferential abuse-of-discretion standard." *Gall*, 552 U.S. at 52; *Carty*, 520 F.3d at 993 ("The abuse of discretion standard applies to all sentencing decisions, whether the sentence is inside the Guidelines range or outside of it."). The en banc decision in *United States v. Hinkson*, 585 F.3d 1247 (9th Cir. 2009) (en banc), settled the standard of review for abuse of discretion in the Ninth Circuit. Our circuit has adopted "a two-part test to determine objectively whether a district court has abused its discretion." *Hinkson*, 585 F.3d at 1261. The first step "is to determine de novo whether the trial court identified the correct legal rule to apply to the relief requested." *Id.* at 1261 62. If the trial court did not do so, it abused its discretion. If, instead, the trial court identified the correct legal rule, "we move to the second step of our abuse of discretion test." *Id.* at 1262. At this stage, we must "determine whether the trial court's application of the correct legal standard was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record." *Id.* (quotation marks and citation omitted). "If any of these three apply, only then are we able to have a definite and firm conviction that the district court reached a conclusion that was a mistake or was not among its permissible options,

and thus that it abused its discretion by making a clearly erroneous finding of fact." *Id.* (quotation marks omitted).[3]

[7] As discussed, the district court carefully and thoroughly explained the bases for its sentence. The court observed that, were it not for the mitigating factors presented, "Mr. Maier would come perilously close to the [statutory] maximum of [240 months.]" It noted that "there are mitigating factors that I do have to take into consideration and I will take into consideration." The court also observed that Maier's case shared certain characteristics with those of other child pornography defendants: "no record, [the defendant is] very young . . . [and is a] productive member[ ] of society." The district court's observation that Maier's mitigating factors are shared by many child pornography defendants was a sufficient explanation for why it believed a below-Guidelines sentence was unwarranted. *See, e.g.*, *United States v. Overton*, 573 F.3d 679, 699-700 (9th Cir. 2009) ("[Defendant's] argument for a low-end sentence, which was primarily based on his alleged good character, was straightforward and uncomplicated. Thus, a thorough explanation by the court was not required."). The district court was required to do no more than sketch its reasons for choosing not to depart downward. *See Rita*, 551 U.S. at 358-59; *Carty*, 520 F.3d at 995. The district court exceeded this obligation. Accordingly, Maier's sentence is not procedurally unreasonable.

[8] Maier's sentence is also substantively reasonable. After observing that many child pornography defendants presented similar mitigating factors, the district court concluded that the specific circumstances of Maier's offense outweighed these factors in this case. These circumstances include: (1) the

---

[3]Although the pre-*Hinkson* standard for abuse of discretion review has been referenced in at least one post-*Hinkson* appeal, *see, e.g.*, *United States v. Dewey*, 599 F.3d 1010, 1016 (9th Cir. 2010), the *Hinkson* standard is the correct and controlling standard under our current circuit precedent.

extremely large number of images Maier distributed and received; (2) the fact that some of the images were sadistic and violent, beyond the violence of sexual abuse itself; (3) the fact that many of the images depicted very young children and infants, including one image depicting a newborn baby who still had part of its umbilical cord attached; (4) deference to Congress's policy conclusion that receipt or distribution of child pornography is an extremely serious offense that merits severe punishment; (5) Maier's expression of his desire to have a daughter to molest, regardless of whether this desire had an element of fantasy; and (6) other comments Maier made in online conversations in which he expressed a desire to abuse children. In view of these facts, the district court did not commit an error of judgment in concluding that Maier's case did not warrant a downward departure.

Nor did the sentencing enhancements Maier received overstate the seriousness of his offense. Consider two examples: First, the enhancement for materials involving prepubescent minors references children who have not attained twelve years of age. *See* U.S.S.G. § 2G2.2(b)(2). According to Agent Prado's testimony, many of the images Maier sent and received involved much younger children, including infants and toddlers still in diapers. Second, § 2G2.2(b)(7)(D) indicates a five-level increase is warranted when the offense involves "600 or more images"; the district court found that Maier's activities involved "thousands" of pictures. These facts indicate that Maier's case is not the mine-run child pornography case. Put differently, the sentencing enhancements call for increased punishment for conduct that is much less horrific than Maier's.

In sum, the district court carefully considered the totality of the circumstances in determining Maier's sentence, and the sentence it imposed was not substantively unreasonable.

## IV.

We hold that, where a district court must exercise its discretion in deciding which count to vacate under *Hector*, it

must be guided by the factors set forth in 18 U.S.C. § 3553(a). As the district court carefully and correctly considered these factors both in determining which count to vacate and in sentencing Maier, and because the sentence imposed is neither procedurally nor substantively unreasonable, we **AFFIRM**.