**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

UNITED STATES OF AMERICA,
      *Plaintiff-Appellee,*

v.

JOHN P. DEWEY,
      *Defendant-Appellant.*

No. 08-30450

D.C. No.
4:08-cr-00076-
SEH-1

OPINION

Appeal from the United States District Court
for the District of Montana
Sam E. Haddon, District Judge, Presiding

Argued and Submitted
January 13, 2010—Seattle, Washington

Filed March 26, 2010

Before: Andrew J. Kleinfeld and Richard C. Tallman,
Circuit Judges, and Benjamin Hale Settle,* District Judge.

Opinion by Judge Settle

---

*The Honorable Benjamin Hale Settle, United States District Judge for the Western District of Washington, sitting by designation.

## COUNSEL

Mark D. Meyer, Great Falls, Montana, for the defendant-appellant.

Joseph E. Thaggard, United States Attorney's Office, Helena, Montana; Leif M. Johnson (argued), United States Attorney's Office, Billings, Montana, for the plaintiff-appellee.

## OPINION

SETTLE, District Judge:

This matter involves challenges to a career offender sentence enhancement. As part of a plea agreement, Defendant-Appellant John P. Dewey ("Dewey") pleaded guilty to participating in a conspiracy to distribute methamphetamine. The district court sentenced Dewey using the Sentencing Guidelines and applied the career offender enhancement based on Dewey's criminal history. Dewey timely appealed. Dewey contends (1) his trial counsel was ineffective; (2) the trial court erred in sentencing him as a career offender; (3) the trial

court imposed an unreasonable sentence; and (4) the trial court erred in not treating a letter personally written by Dewey to the district court as a motion for withdrawal of guilty plea. We review the matter pursuant to our authority under 28 U.S.C. § 1291. We decline to review Dewey's ineffective assistance claim because, without a fully developed record, it is not properly before the Court on direct appeal, and we affirm the trial court's other rulings on these issues.

## I.  FACTS AND PROCEDURAL HISTORY

Dewey is from Great Falls, Montana. In his adult life, Dewey committed several crimes. The following summarizes Dewey's criminal history:

1.  1988, misdemeanor negligent endangerment

2.  1990, criminal sale of dangerous drugs (two separate felony offenses)

3.  1990, forgery (felony)

4.  1995, assault

5.  1996, assault, unlawful restraint, and criminal mischief

6.  2003, misdemeanor theft

7.  2003, operating a clandestine laboratory (felony)

In 1990, Dewey pleaded guilty to two counts of the criminal sale of dangerous drugs. For each count, he was sentenced to fifteen years in prison, with five years of that sentence suspended. The sentences were set to run concurrently. In 1996, while on parole from those offenses, Dewey was convicted of misdemeanor assault. As a result of the assault conviction, the court revoked the five years that had been suspended from his

1990 sentence. Thus, he was re-incarcerated in 1996 for his 1990 felony drug conviction. While on parole, Dewey committed the instant offense.

Beginning in January 2008, Dewey made several sales of methamphetamine to a confidential informant. On June 4, 2008, the Grand Jury for the District of Montana indicted Dewey on one count for conspiring with his live-in girlfriend, Sharon Olson ("Olson"), to distribute methamphetamine, which violated 21 U.S.C. §§ 841(a)(1) and 846. On June 12, 2008, Dewey entered a plea of not guilty to this crime.

On August 1, 2008, Plaintiff-Appellee (the "Government") filed an Information which provided Dewey with notice of its intent to seek a career offender sentence enhancement based on Dewey's prior felony drug trafficking offenses.

On August 7, 2008, Dewey entered into a plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B). The plea agreement expressly provided that (1) the court is not obligated to accept or follow the recommendations made by the Government, and that (2) the Defendant understands the charge to which he will plead guilty carries a maximum penalty of thirty years imprisonment and a $2,000,000 fine, pursuant to 21 U.S.C. §§ 841(b)(1)(C) and 851.

On August 13, 2008, Dewey appeared in district court for a change of plea hearing. The court first determined that Dewey was competent to proceed with the hearing. Next, the court engaged Dewey in a colloquy that thoroughly detailed the change of plea proceeding, how Dewey's sentence would be determined, and the rights to which Dewey was entitled as part of the process. Dewey confirmed that he understood the indictment, the charge against him, and the potential career offender sentence he faced for his crime. The court informed Dewey that it would calculate an applicable Guideline sentence range for the offense of conviction, that this Guideline

range was not binding on the court, and that it served only as a starting point for consideration of an appropriate sentence. The court further explained to Dewey that, in determining what sentence to impose, it would consider a host of other factors that are spelled out in 18 U.S.C. § 3553(a). Dewey confirmed he understood how sentencing would work in his case. The court also informed Dewey that should it decide to depart from the recommended sentence, such a decision could not be used to form the basis for seeking to withdraw a guilty plea. Dewey affirmed that he was clear about this point.

At the close of the change of plea hearing, Dewey entered a plea of guilty. The court accepted Dewey's plea, adjudged him guilty, and informed him that a presentence report would be provided before sentencing.

The Presentence Report ("PSR") included Dewey's written admission of guilt to the conspiracy charge and determined that Dewey had a base offense level of 20, since he was responsible for distributing at least 20—but less than 30—grams of methamphetamine. However, because of Dewey's prior felony convictions, his offense level was increased to 34. In exchange for Dewey's guilty plea, the Government recommended a three-level downward adjustment for his acceptance of responsibility, resulting in an offense level of 31. The PSR concluded that Dewey qualified as a career offender. The probation officer then determined that the Guidelines projected a sentence of imprisonment with a range of 188 to 235 months.

Dewey objected to being classified as a career offender, arguing that his 1990 drug trafficking convictions had occurred more than fifteen years before the current charge and could not, therefore, be used to calculate his offender score. The probation officer rejected this argument noting that Dewey's suspended sentence was revoked and as part of that revocation he was sentenced to five years custody, which occurred well within the fifteen-year limit. As a result, the

probation officer concluded that this fact triggered the career offender enhancement.

On October 27, 2008, against the advice of his lawyer, Dewey personally wrote a letter to the district court stating that he would never have signed the plea agreement if he knew he would be sentenced as a career offender. He claimed that his attorney, Mr. Obie, assured him that his sentencing range would not exceed five years. He also complained that Mr. Obie had done nothing to prevent him from being designated a career offender. In his letter, Dewey asked the court to set aside or vacate the sentencing, or, at the very least, to appoint him new counsel willing to challenge the issue.[1] Following this letter, Dewey's attorney moved to withdraw as Dewey's counsel on the basis that they had "irreconcilable differences."

The district court held an *ex parte* hearing on the motion to withdraw as counsel. The court expressly stated that a motion to withdraw Dewey's guilty plea was not before the court. Ultimately, the court determined Dewey was simply dissatisfied with being classified as a career offender and denied Mr. Obie's motion to withdraw. Mr. Obie remained Dewey's counsel throughout the proceedings below. At the close of the *ex parte* hearing, the court urged Dewey and Mr. Obie to fully discuss Dewey's case and to be prepared for sentencing as scheduled.

On November 17, 2008, Dewey's sentencing hearing was held, and the court classified Dewey as a career offender. The court concluded that Dewey's prior felony drug convictions qualified as predicate offenses for classifying Dewey as a career offender and calculated the advisory Sentencing Guideline at 188 to 235 months.

---

[1]Although Dewey's October 27, 2008, letter requested the court to "set aside or vacate the sentencing," the court did not sentence him until November 17, 2008. We interpret Dewey's letter to be a request to stop the sentencing process pending his request for new counsel.

Before sentencing Dewey, the district court informed him that it determined Dewey's sentence after considering the PSR, Dewey's statements, his counsel's statements, witness statements, opposing counsel's statements, the full record, and the totality of the circumstances. The court acknowledged it was obligated to impose a sentence that is not greater than necessary to meet the sentencing law and to meet the goals of the sentencing program, and stated it had considered the factors found in 18 U.S.C. § 3553(a). Ultimately, the court sentenced Dewey to 224 months imprisonment and 6 years supervised release. Dewey timely appealed.

## II. DISCUSSION

### A. Ineffective Assistance of Counsel

We generally do not review challenges to the effectiveness of defense counsel on direct appeal. *United States v. Jeronimo*, 398 F.3d 1149, 1155 (9th Cir. 2005); *United States v. McKenna*, 327 F.3d 830, 845 (9th Cir. 2003). On the present record we are unable to determine with reasonable certainty "what counsel did, why it was done, and what, if any, prejudice resulted." *United States v. Laughlin*, 933 F.2d 786, 788-89 (9th Cir. 1991). Thus, Dewey's ineffective assistance of counsel claim is not properly before us. *United States v. Anderson*, 850 F.2d 563, 565 n.1 (9th Cir. 1988). However, Dewey is not foreclosed from bringing this claim in a habeas proceeding pursuant to 28 U.S.C. § 2255.

### B. Career Offender Status

Dewey next argues that the district court erred in sentencing him as a career offender. We review the district court's factual findings during sentencing for clear error and its interpretation of the Sentencing Guidelines *de novo. United States v. Alexander*, 287 F.3d 811, 818 (9th Cir. 2002). A district court's application of the Sentencing Guidelines to the facts of a case are reviewed for abuse of discretion. *Id.*

**[1]** A district court may sentence a defendant as a career offender when:

> (1) the defendant was at least eighteen years old at the time the defendant committed the instant offense of conviction; (2) the instant offense of conviction is a felony that is either a crime of violence or a controlled substance offense; and (3) the defendant has at least two prior felony convictions of either a crime of violence or a controlled substance offense.

U.S.S.G. § 4B1.1. Dewey concedes that the first two elements are satisfied in his case and that his 2003 felony conviction for operating a clandestine laboratory should count as one of the two required predicate offenses. However, Dewey argues that his 1990 felony conviction for the criminal sale of dangerous drugs (ADC-90-155) is too stale to be counted as the second qualifying predicate offense. If the 1990 conviction is counted, the trial court properly classified Dewey as a career offender.

**[2]** The applicable time period for counting prior felony convictions is set out in Section 4A1.2(e) of the federal Sentencing Guidelines, which provides in pertinent part:

> (1) Any prior sentence of imprisonment exceeding one year and one month that was imposed within fifteen years of the defendant's commencement of the instant offense is counted. Also count any prior sentence of imprisonment exceeding one year and one month, whenever imposed, that resulted in the defendant being incarcerated during any part of such fifteen-year period.

> (2) Any other prior sentence that was imposed within ten years of the defendant's commencement of the instant offense is counted.

(3) Any prior sentence not within the time periods specified above is not counted.

Therefore, to count Dewey's 1990 felony conviction, the sentence he received must meet the requirements set out in § 4A1.2(e)(1) or (2).

**[3]** In 1990, Dewey was sentenced to fifteen years in prison for the criminal sale of dangerous drugs. Thus, his 1990 conviction was for a controlled substance offense, and resulted in a sentence of imprisonment exceeding one year and one month. The suspended portion of Dewey's 1990 sentence was imposed in 1996, following his misdemeanor assault conviction, and Dewey was incarcerated. Thus, even though the sentence was imposed in 1990, more than fifteen years before his present drug offense, he was *incarcerated* for that 1990 controlled substance offense within fifteen years of committing the instant offense.

The guidelines address the counting of a sentence in cases like this one, where a prior sentence is suspended and then later revoked. U.S.S.G. § 4A1.2(k)(2)(B)[2] explains that:

> Revocation of probation . . . may affect the time period under which certain sentences are counted as provided in § 4A1.2(d)(2) and (e). For the purposes of determining the applicable time period, use the following: (i) in the case of an adult term of imprisonment totaling more than one year and one month, the date of last release from incarceration on such sentence (see § 4A1.2(e)(1)); . . . (iii) in any other case, the date of the original sentence (see § 4A1.2(d)(2)(B) and (e)(2)).

---

[2]The commentary to the career offender provisions directs the district court to refer to § 4A1.2 when it computes criminal history for purposes of determining whether a defendant qualifies as a career offender. *See* U.S.S.G. § 4B1.2, application note 3.

**[4]** The provision's plain language provides that, to qualify as a career offender predicate offense, the *sentence term* must exceed one year and one month; it does not require any particular length of actual incarceration. *See* U.S.S.G. § 4A1.2(k)(2)(B); *see also* U.S.S.G. § 4A1.2(b), comment n.2 (sentence pronounced, not time served, is relevant to career offender designation); *United States v. Romary*, 246 F.3d 339, 343 n.3 (4th Cir. 2001) (applying a similar analysis). For sentences that exceed one year and one month, the guideline directs us to look to "the date of last release from incarceration on such sentence" to determine whether any period of incarceration for that sentence occurred within fifteen years of the instant offense. Because Dewey's 1990 sentence was greater than one year and one month, and his date of last release from prison on that sentence was within the fifteen-year period, the trial court did not err in concluding that Dewey qualified as a career offender.

## C.   Unreasonable Sentence

Dewey contends that the district court imposed an unreasonable sentence. We review criminal sentences for reasonableness. *United States v. Booker*, 543 U.S. 220, 260-62 (2005). Our review for reasonableness is a review for an abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). We first ensure that the sentence is procedurally sound, and then review the sentence for substantive reasonableness under an abuse of discretion standard. *Id.*

### 1.   Procedural Error in Sentencing

**[5]** In *Gall*, the Court described instances of "significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence . . . ." *Id.*

**[6]** Here, similar to the facts in *Gall*, the district court "correctly calculated the applicable Guidelines range, allowed both parties to present arguments as to what they believed the appropriate sentence should be, considered all of the [18 U.S.C.] § 3553(a) factors, and thoroughly documented [its] reasoning," and did not regard the Guidelines as mandatory. *Id.* Therefore, we conclude that Dewey's sentencing was procedurally sound.

## 2. Substantive Error in Sentencing

**[7]** The substantive component relates to the length of the sentence. *See United States v. Hamilton*, 510 F.3d 1209, 1217-18 (10th Cir. 2007), *cert. denied*, ___ U.S. ___, 128 S. Ct. 1922 (2008). The *Hamilton* court noted, "In evaluating the substantive reasonableness of a sentence, we ask whether the length of the sentence is reasonable considering the statutory factors delineated in 18 U.S.C. § 3553(a)." *Id.* With respect to the factors in § 3553(a), we have recently stated that:

> [A]ppellate courts must give due deference to the district court's decision that the § 3553(a) factors, on a whole, justify the extent of the variance. This deference is required because the sentencing judge is in a superior position to find facts and judge their import under § 3553(a) in the individual case. The judge sees and hears the evidence, makes credibility determinations, has full knowledge of the facts and gains insights not conveyed by the record. The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court. Moreover, district courts have an institutional advantage over appellate courts in making these sorts of determinations, especially as they see so many more Guidelines sentences than appellate courts do. In arriving at a sentence, a district court need not expressly state how each of the § 3553(a)

factors influenced its decision: the district court need not tick off each of the § 3553(a) factors to show that it has considered them. Instead, appellate courts assume that district judges know the law and understand their obligation to consider all of the § 3553(a) factors, not just the Guidelines.

*United States v. Autery*, 555 F.3d 864, 872-73 (9th Cir. 2009) (internal citations and quotations omitted). "Nevertheless, we may reverse if, upon reviewing the record, we have a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors." *United States v. Amezcua-Vasquez*, 567 F.3d 1050, 1055 (9th Cir. 2009).

To support his position that the district court imposed an unreasonable sentence, Dewey reviews the mandate of § 3553(a). For example, Dewey discusses that post *Booker*, sentencing courts must (1) impose a sentence no greater than necessary, (2) broaden consideration of the factors set out in § 3553(a), and (3) must not accord the Guideline calculation greater weight than the other § 3553(a) factors. Though Dewey correctly sets out the requirements upon which a district court judge's sentence is reviewed for substantive reasonableness, he does not point out or suggest that the district court failed to account for the relevant factors.

**[8]** Dewey essentially makes two arguments to support his contention that the sentence he received was unreasonable. First, Dewey claims that he is not a "major dealer," and the sentence imposed was more appropriate for what a "major dealer" would receive. However, he does not cite any authority to support his position that career offender designation is reserved for "major dealers." The district court, in discussing Dewey's criminal history, noted that the instant offense was Dewey's third felony drug trafficking offense. Therefore, Dewey's within-guideline sentence cannot be deemed unrea-

sonable when his prior felony offenses bring him within the Guidelines as a career offender.

Second, Dewey argues that his sentence is unreasonable in light of the sentence his co-conspirator, Olson, received. 18 U.S.C. § 3553(a)(6) directs sentencing courts to consider the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct. Though Dewey cites this section, he does not attempt to establish that Olson's criminal record was similar to his. Therefore, this claim is without merit, and we conclude the district court did not abuse its discretion in imposing Dewey's reasonable sentence.

## D.   Withdrawal of Guilty Plea

Finally, Dewey contends the district court erred when it did not treat his letter to the court, which pertained to his being dissatisfied with Mr. Obie's assistance, as a motion to withdraw his guilty plea.

**[9]** To begin with, "[t]he Defendant has no 'right' to withdraw his plea." *United States v. Rubalcaba*, 811 F.2d 491, 493 (9th Cir. 1987). "If a motion for withdrawal of a plea of guilty . . . is made before sentence is imposed . . . the court *may* permit withdrawal of the plea upon a showing by the defendant of any fair and just reason." *Id.* (citing Fed. R. Crim. P. 11(d)(2)(B), formerly 32(d) (emphasis added)). The fair-and-just standard requires a district court to vacate the guilty plea when it is "shown to have been unfairly obtained or given through ignorance, fear or inadvertence." *Rubalcaba*, 811 F.2d at 493.

**[10]** At the *ex parte* hearing, the district court noted that no motion to withdraw Dewey's plea was before it. Moreover, at the close of the *ex parte* hearing on the motion to withdraw as counsel, the court recommended to both Mr. Obie and Dewey that they talk fully and freely between themselves to

whatever extent they thought necessary and appropriate to be prepared to go forward with sentencing. This statement by the court to Mr. Obie and Dewey served as an implicit invitation for them to file a formal motion to withdraw Dewey's plea of guilty should they deem such a motion necessary. No such motion was filed. We hold that no error occurred when the trial court did not treat Dewey's letter as a motion to withdraw his guilty plea. To the extent this issue is connected to Dewey's ineffective assistance of counsel claim, again, Dewey is not foreclosed from raising such a claim in a § 2255 hearing.

## III.   CONCLUSION

We decline to review Dewey's ineffective assistance of counsel claim. We affirm the trial court's other rulings.

**AFFIRMED**.